UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ESTRELLA DEPPNER**<br>7502 Wildwood Drive<br>Takoma Park, MD 20912<br><br>**Plaintiff**<br><br><br>v.<br><br><br>**UNITED STATES OF AMERICA**<br><br>**SERVE:**<br>**Attorney General Merrick B. Garland**<br>**The Department of Justice**<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>**Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No._____ |

## COMPLAINT

## JURISDICTION AND VENUE

1. Jurisdiction over Plaintiff's federal statutory claims for redress is conferred on the Honorable Court by 28 U.S.C. Section 1346(b)(1).

2. The venue is proper in this court under 28 U.S.C. Section 1402(b) as all events complained of herein arose in the District of Columbia.

## PARTIES

3. Estrella Deppner is an adult citizen of the State of Maryland.

1

4. The Defendant United States of America, the U.S. Federal Government, transacts business in the District of Columbia.

## STATEMENT OF FACTS

5. Plaintiff, Estrella Deppner (Ms. Deppner), is a registered nurse employed by Spectrum Healthcare Resources, Inc. and provided nursing services for the U.S. Department of Veteran's Affairs health unit at 1800 G Street, N.W. Washington, D. C. 20006. She was employed at this facility from February 4, 2015, to April 2016. The incidents in this claim occurred in 2015 and 2016.

6. The building 1800 G Street, N.W., where the Department of Veterans Affairs health unit is located, is owned by Blake Real Estate Inc ("Blake"). There were a variety of US governmental tenants in 1800 G Street N.W. including the U.S. Department of Veteran's Affairs, such as the former first lady's (Michelle Obama) office. For example, First Lady Michelle Obama was one of the valued tenants of this building and had an office on the 8th Floor.

7. In 2015 and 2016, the health unit in 1800 G Street, N.W., experienced an infestation of bed bugs.

8. Bugs first bit Ms. Deppner on Februrary 4, 2015, at her office desk at 1800 G Street, N.W., 4th Floor, Rm 438 -the Health Unit for the Veteran's Affairs. February 4, 2015 was Ms. Deppner's first day of work.

9. Shortly after that February 4, 2015, Ms. Deppner complained to Safety and Facilities Manager Albert Zanella of the Veteran's Affairs Administration about bed bugs, the bites and the incident that occurred on February 4, 2015.

10. Ms. Deppner was bitten almost daily throughout 2015 and filed written complaints to her supervisor, Delores Tyms, the Point of Contact for the Veteran's Affairs Administration, and Dr. Nancy Anthracite, a coworker at Spectrum, at least every month.

11. The suite containing the health unit, where Ms. Deppner worked, had wall-to-wall carpeting. She believes that the bed bugs hide within the wall-to-wall carpet, as they were not readily observable.

12. In February 2016, Ms. Deppner was bitten on her arms, legs, face, and through her stockings and pantyhose by the vermin. This assault by biting vermin continued through 2016.

13. The bed bugs' bites created sores, small bumps, and cratered scars on Ms. Deppner's body. Also, the bites left indented (caved in) scars, which made her miserable, anxious, and uncomfortable.

14. On or about February 12, 2016, Ms. Deppner, as she did throughout 2015, notified Dr. Nancy Anthracite, the Staff physician of the Veterans Affairs Health Unit, about the bites she experienced.

15. On or about February 15, 2016, Ms. Deppner captured one of the bed bugs, left the captured bed bug, stuck it to a piece of scotch tape, and placed it as a specimen on Dr. Anthracite's desk for her to see. However, Dr. Anthracite was not present when Ms. Deppner put the captured 'bed bugs' caught on tape on her desk.

16. On or about February 16, 2016, when Dr. Anthracite returned, she took a picture of the bed bug on her desk. Dr. Anthracite sent the photo by email to Albert Zanella, the

Safety and Facilities building manager, an employee of the Veterans Affairs Administration.

17. Ms. Deppner experienced bed bug bites through the end of April 2016 until she could no longer take it. Ms. Deppner again complained to Mr. Zanella.

18. Ms. Deppner complained to Spectrum Healthcare Resources, Inc.'s ("Spectrum") management about the bites.

19. The Spectrum officials, including Project Director Jerl Huling, who made light of Ms. Deppner's complaints, passed the complaints on to (1) Safety Risk Management of the Federal Occupational Health Program Support Center of the U.S. Department of Health and Human Services, and (2) Delores Tyms, the point of contact for the Department of Veterans Affairs.

20. Ms. Deppner again complained to Mr. Zanella of the Veteran's Affairs Administration.

21. Upon information and belief, the Spectrum officials attempted to impede Ms. Deppner's ability to complain about the bed bug situation.

22. On February 17, 2016, Blake management hired Triple S Services, Inc., a Local Washington, DC-based exterminator to inspect and conduct extermination of the offices at 1800 G Street, N.W. Triple S inspected the Health Unit after 6 pm. and then installed sticky 'cock roach' traps around the offices.

23. Also, a canine inspection of the premises was conducted. Each of these examinations produced no infestation of the premises.

24. Ms. Deppner believes that Triple S caught nothing because the 'bed bugs' were in the carpet of the Health Unit. The chief inspector of Triple S insulted Ms. Deppner by alleging, to her face, that she brought the 'bed bugs' from her home and asked if she had "scabies down there?" Ms. Deppner asked Mr. John Campbell (Triple S Manager) if he wanted to see her thighs for examination for signs of scabies.

25. On February 17, 2016, Blake Real Estate Management, Inc. concluded and admitted that the bed bugs that were biting Ms. Deppner were 'bed bugs'. This admission was confirmed by the photo of the specimens Dr. Anthracite emailed to Albert Zanella, the Safety and Facilities building manager with the Veterans Affairs Administration.

26. Ms. Deppner took pictures of the 'bed bugs' on her cell phone camera before giving the bugs to the exterminators. Mr. John Campbell, the inspector from Triple S, stated that he would take the bugs to their (Triple S's) entomologist for accurate treatment measures.

27. The bug traps were ineffective, and Ms. Deppner continued to receive bites on her body. Blake Real Estate produced a report about the building's 'bed bug' problem.

28. She continued to complain about being bitten by bed bugs on her body.

29. Other employees have experienced the same biting bed bugs in the health unit.

30. Miriam Mickel is an employee who was bitten in the health unit in her own office in early March 2016. Ms. Mickel took personal action by spraying her worksite, but it was to no avail.

31. The spraying did not eradicate the bed bugs or end the infestation problem at her worksite. There were other employees bitten as well.

32. On or about February 18, 2016, a complaint about the bed bugs biting was submitted by Ms. Deppner to her Veteran Affair's Administration Point of Contact ("P.O.C.") -

Dolores Tyms, Nurse Manager, and Jeneive Wallace of the Safety Risk Management of the Federal Occupational Health, U.S. Department of Health and Human Services ("FOH"). Ms. Deppner provided Safety Incident reports to FOH in compliance with its policy.

33. Plaintiff complained about the biting bed bugs to management on February 17, 2016. She told Ms. Delores Tyms, the Point of Contact (P.O.C.) of the Veteran's Administration, that the health unit was put on emergency use only by FOH. Ms. Tyms got mad because Ms. Deppner talked to FOH and Mr. Al Zanella. Mr. Zanella told Ms. Deppner to close her office.

34. Triple S did not exterminate but rather put down sticky roach traps all over the health unit. These efforts were unsuccessful because the biting bed bugs remained in the office, and Plaintiff suffered additional bites. Ms. Deppner asked to have the Health Unit vacuumed every day. However, the Veterans Affairs Administration did not do this.

35. Ms. Deppner administered allergy shots to a client on March 19, 2016, when she got bitten by a bed bug on her right arm. She felt a stinging pain, and her right arm was sore and swollen when she came out of the Treatment Room.

36. The clinic physician that day, Risa Claytor, MD, said that Ms. Deppner was bitten by a bed bug and had two bite marks on her right arm. While on the way home, Ms. Deppner was feeling dizzy, half of her face was aching, her breathing was labored, her chest felt heavy on the right side, and she felt like throwing up. She told her husband to pull over on the side of the highway at University Blvd and New Hampshire Avenue and took her to the local CVS minute clinic.

37. At the CVS Minute Clinic, the R.N. Practitioner recommended visiting her primary physician for further treatment. Bed bug bites continued for the remainder of March and April 2016.

38. Ms. Deppner went to her primary physician Horatio Schapiro, MD to address the extreme weakness, shortness of breath, intense itching, swollen lymph nodes, chills, drowsiness, and night sweating she was experiencing.

39. The physician informed her that her cells were becoming sickled, and she was experiencing severe anemia. The physician told Ms. Deppner that anemia could result from bed bug bites. This diagnosis was the result of the lab repetitive laboratory test results which show the presence ovalocytes.

40. Ms. Deppner continues to experience pain, loss of energy, chills, night sweats, bruising, and lymph nodes swelling, and her blood laboratory tests were abnormal. Ms. Deppner has taken maintenance medications for her health.

## COUNT I
(Negligence – United States of America)

41. Plaintiff incorporates by reference paragraphs 1 through 40 as if fully set forth herein.

42. As the business tenant, Defendants owed Plaintiff, as an invitee on the premises, a duty to maintain the premises in a safe, sanitary condition, including the office rooms where Plaintiff delivered health care services to the veterans without bedbug infestation that resulted in her bites.

43. This incident was the direct and proximate result of the breach of the duties by Defendant, United States of America as a business tenant, whose acts and omissions allowed the bed bug infestation to continue include, but are not limited to the following:

   a. failure to maintain adequate pest control.

   b. failure to provide proper extermination and available treatment.

   c. failure to implement a comprehensive extermination protocol to prevent the bedbug infestation.

   d. failure to comply with applicable safety standards, including but not limited to D.C. Code Title 32- 801, 808, and 812; and

   e. failure to otherwise take adequate and necessary precautions to protect invitees, including Plaintiff.

   f. The negligence described above was the direct and proximate cause of the continued bedbug infestation and the resulting bites to Plaintiff.

   g. As a direct and proximate result of the negligence of the Defendant United States of America, Plaintiff sustained serious and permanent injuries; has incurred, and will continue to suffer substantial expenses for medical care and attention as well as past and

future wage loss; has suffered substantial and medically demonstrable impairment that has significantly affected her ability to perform her customary daily activities; and has suffered, and may continue to suffer, physical pain and mental anguish.

**WHEREFORE,** Plaintiff demands judgment against Defendant and the following relief:

A. An award of equitable relief for lost wages, compensation, future lost earnings, economic losses, pre-and post-judgment interest, and any other affirmative relief that may be deemed appropriate at trial;

B. An award of pecuniary compensatory damages for the emotional injuries suffered as a direct result of Defendant's unlawful conduct including, but not limited to, humiliation, loss of self-esteem, embarrassment, hurt, fear, frustration, emotional distress, inconvenience, and damage to her professional reputation;

C. An award of the disbursements, costs, expenses, expert witness fees, incurred by Plaintiff in bringing this action;

D. An award of attorney fees;

E. Such other relief as the court deems proper and just: and

F. **DEMAND FOR A JURY TRIAL.**

    Respectfully submitted,

      /s/Donna Beasley
Donna Beasley, #434441
419 7th Street, NW
Suite 405
Washington, DC. 20004
(202) 393-7347
ATTYBEAS@AOL.COM